**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – X

AFN ABSPROP001, LLC and ARG ME19PCK001, LLC,

    -against-

IMPERIAL RELIANCE, LLC, and KINGS OIL COMPANY, LLC,

                Defendants.

:
:
:
:
:
:
:
:
:
:
:
:

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – X

Civil Action No. 1:25-cv-10683

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS**

**TABLE OF CONTENTS**

STATEMENT OF FACTS ............................................................................................... 3

    The Parties and the Master Leases ................................................................... 3

    The PSAs, Termination, and the HZ LOI ........................................................ 4

LEGAL STANDARD ..................................................................................................... 5

ARGUMENT .................................................................................................................. 6

I.    BOTH DEFENDANTS LACK CAPACITY TO ASSERT COUNTERCLAIMS OR AFFIRMATIVE DEFENSES. ..................................................................... 6

II.    THE FIRST COUNTERCLAIM FOR BREACH OF THE ALLEGED "SUBSEQUENT AGREEMENT" MUST BE DISMISSED. ........................................... 8

    A.    The Entire Agreement and No-Oral-Modification Clauses Bar the Claim. .......... 8

    B.    The Statute of Frauds Bars the Claim. ................................................. 10

    C.    Defendants' Own Documents Expose the Claim's Implausibility. ..................... 11

III.    THE SECOND COUNTERCLAIM FOR BREACH OF CONTRACT AS THIRD-PARTY BENEFICIARY OF THE HZ LOI (FINDER'S FEE) MUST BE DISMISSED. ............................................................................................... 13

    A.    Kings Oil is not a Third-Party Beneficiary. ......................................... 13

    B.    The HZ LOI Is an Unenforceable Agreement to Agree. ..................................... 14

    C.    Plaintiffs Did Not Breach. ................................................................. 14

    D.    The Finder's Fee Is Unlawful. ............................................................ 15

IV.    THE THIRD COUNTERCLAIM FOR BREACH OF CONTRACT AS THIRD-PARTY BENEFICIARY OF THE HZ LOI (UNPAID LEASE AMOUNTS) MUST BE DISMISSED. .................................................................................. 15

V.    THE FOURTH COUNTERCLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING MUST BE DISMISSED. ............................................................................................... 16

    A.    The Claim Is Duplicative. ................................................................. 16

    B.    No Operative Contract Supports the Claim. ......................................... 16

    C.    The Implied Covenant Cannot Create New Obligations. ..................................... 16

VI.    THE FIFTH COUNTERCLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS MUST BE DISMISSED. ................................... 17

    A.    Kings Oil Lacks Standing. ................................................................. 17

    B.    Kings *Investment* Voluntarily Terminated the PSAs. ......................................... 17

    C.    Defendants Fail to Allege Wrongful Means. ......................................... 18

    D.    Defendants Fail to Allege Actual Breach. ......................................... 18

i

VII.    THE SIXTH COUNTERCLAIM FOR FRAUDULENT INDUCEMENT (INDUCEMENT TO TERMINATE PSAS) MUST BE DISMISSED. .......................... 19

    A.    The Claim Fails Under Rule 9(b)............................................................. 19

    B.    The Claim Is Barred by the Contractual Provisions. ........................................ 20

    C.    The HZ LOI Contradicts the Counterclaim. ........................................ 20

    D.    The Fraud Claim Cannot Circumvent the Statute of Frauds............................... 21

    E.    Promises of Future Performance Are Not Actionable Fraud............................... 21

VIII.    THE SEVENTH COUNTERCLAIM FOR FRAUDULENT INDUCEMENT (INDUCEMENT TO LEASE) MUST BE DISMISSED. ............................................... 22

IX.    THE EIGHTH COUNTERCLAIM FOR NEGLIGENT MISREPRESENTATION MUST BE DISMISSED. ............................................................. 23

    A.    No Special or Privity-Like Relationship Exists. ..................................... 23

    B.    The Claim Is Duplicative and Barred by the Contractual Provisions. ................. 24

X.    THE NINTH COUNTERCLAIM FOR CONVERSION MUST BE DISMISSED........ 24

    A.    Plaintiffs Hold a Perfected Security Interest in the Personal Property. .............. 24

    B.    Plaintiffs Never Took Possession of or Disposed of the Personal Property. ........ 24

    C.    The Claim Fails to Identify Specific Property. ...................................... 25

    D.    The Claim Is Duplicative. ...................................................... 26

XI.    THE TENTH COUNTERCLAIM FOR UNJUST ENRICHMENT MUST BE DISMISSED. ...................................................................... 26

XII.    THE ELEVENTH COUNTERCLAIM FOR OFFSET/SETOFF MUST BE DISMISSED. ...................................................................... 27

    A.    The Claim Is Wholly Derivative......................................................... 27

    B.    The Guaranties Expressly Bar Setoff................................................... 27

CONCLUSION.......................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7 Mansion, LLC v. Calvano*,
209 N.Y.S.3d 490 (N.Y. App. Div. 2024) ...............................................................................5

*511 W. 232nd Owners Corp. v. Jennifer Realty Co.*,
773 N.E.2d 496 (N.Y. 2002)..................................................................................................16

*767 Third Ave. LLC v. Greble & Finger*,
LLP, 778 N.Y.S.2d 157 (N.Y. App. Div. 2004) ...................................................................21

*6340 NB LLC v. Cap. One N.A.*,
No. 20-cv-02500, 2024 WL 4100184 (E.D.N.Y. Sept. 5, 2024) ...........................................21

*ABL Advisor LLC v. Peck*,
49 N.Y.S.3d 35 (N.Y. App. Div. 2017) .................................................................................26

*Alpha/Omega Concrete Corp. v. Ovation Risk Planners, Inc.*,
154 N.Y.S.3d 113 (N.Y. App. Div. 2021) .............................................................................27

*Am. List Corp. v. U.S. News & World Rep., Inc.*,
549 N.E.2d 1161 (N.Y. 1989).................................................................................................13

*Am.–Eur. Art Assoc. v. Trend Galleries, Inc.*,
641 N.Y.S.2d 835 (N.Y. App. Div. 1996) .............................................................................27

*Arbor–Myrtle Beach PE LLC v. Frydman*,
158 N.Y.S.3d 821 (N.Y. App. Div. 2022) .............................................................................28

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................5, 11

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007).................................................................................................5, 19

*Bd. of Managers of Chelsea 19 Condo. v. Chelsea 19 Assocs.*,
905 N.Y.S.2d 8 (N.Y. App. Div. 2010) .................................................................................23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................5, 11

*Breuer v. Feder*,
813 N.Y.S.2d 148 (N.Y. App. Div. 2006) .............................................................................14

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005)................................................................................................17

*CBH Medical, P.C. v. Merit Systems LLC*
No. 151859/2021, 2022 WL 16963754, at *1 (N.Y. Sup. Ct. 2022)......................................23

*Charlebois v. J.M. Weller Assocs.*,
531 N.E.2d 1288 (N.Y. 1988)............................................................................................15

*Citibank, N.A. v. Plapinger*,
485 N.E.2d 974 (N.Y. 1985)..............................................................................................27

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
516 N.E.2d 190 (N.Y. 1987)..............................................................................................26

*Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*,
36 N.E.3d 80 (N.Y. 2015).................................................................................................27

*Corsello v. Verizon N.Y., Inc.*,
967 N.E.2d 1177 (N.Y. 2012)............................................................................................27

*Cruz v. FXDirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013)..............................................................................................16

*CSI Grp., LLP v. Harper*,
61 N.Y.S.3d 592 (N.Y. App. Div. 2017) ..............................................................................25

*Dalton v. Educ. Testing Serv.*,
663 N.E.2d 289 (N.Y. 1995)..............................................................................................16

*Danann Realty Corp. v. Harris*,
157 N.E.2d 597 (N.Y. 1959)...........................................................................................9, 20

*Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*,
502 N.E.2d 1003 (N.Y. 1986)............................................................................................21

*Dembeck v. 220 Cent. Park S., LLC*,
823 N.Y.S.2d 45 (N.Y. App. Div. 2006) ..............................................................................24

*Dormitory Auth. of the State of N.Y. v. Samson Constr. Co.*,
94 N.E.3d 456 (N.Y. 2018)...............................................................................................13

*Douds v. Seafarer's Int'l Union of N. Am.*,
148 F. Supp. 953 (E.D.N.Y. 1957) .....................................................................................14

*DuBow v. Century Realty, Inc.*,
98 N.Y.S.3d 844 (N.Y. App. Div. 2019) ................................................................................9

*El T. Mexican Rests., Inc. v. Bacon*,
   921 S.W.2d 247 (Tex. Ct. App. 1995) ...................................................................................6

*Empanada Fresca LLC v. 1 BK St. Corp.*,
   236 N.Y.S.3d 10 (N.Y. App. Div. 2025) .............................................................................16

*Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC*,
   4 N.E.3d 336 (N.Y. 2013)......................................................................................................8

*Eurycleia Partners, LP v. Seward & Kissel LLP*,
   910 N.E.2d 976 (N.Y. 2009).................................................................................................19

*Fariello v. Checkmate Holdings, LLC*,
   918 N.Y.S.2d 408 (N.Y. App. Div. 2011) ...........................................................................20

*Flanagan Corp. v. Lake Cabin Partners, LLC*,
   986 N.W.2d 874, 2022 WL 2824755 (Iowa Ct. App. July 20, 2022).....................................7

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*,
   485 N.E.2d 208 (N.Y. 1985).................................................................................................13

*Gale v. Animal Med. Ctr.*,
   968 N.Y.S.2d 563 (N.Y. App. Div. 2013) ...........................................................................24

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
   406 N.E.2d 445 (N.Y. 1980).................................................................................................18

*Harris v. Provident Life & Accident Ins. Co.*,
   310 F.3d 73 (2d Cir. 2002)....................................................................................................16

*Havana Cent. NY2 LLC v. Lunney's Pub, Inc.*,
   852 N.Y.S.2d 32 (N.Y. App. Div. 2007) .............................................................................18

*High Tides, LLC v. DeMichele*,
   931 N.Y.S.2d 377 (N.Y. App. Div. 2011) ...........................................................................23

*Humble Oil & Refining Co. v. Blankenburg*,
   235 S.W.2d 891 (Tex. 1951).............................................................................................6, 18

*I & I Holding Corp. v. Gainsburg*,
   296 N.Y.S. 752 (App. Div. 1937), *aff'd*, 12 N.E.2d 532 (N.Y. 1938).....................................5

*J.A.O. Acquisition Corp. v. Stavitsky*,
   863 N.E.2d 585 (N.Y. 2007)..................................................................................................23

*Jacobs v. Continuum Health Partners, Inc.*,
   776 N.Y.S.2d 279 (N.Y. App. Div. 2004) ...........................................................................18

v

*Johnson v. Cestone*,
    80 N.Y.S.3d 15 (N.Y. App. Div. 2018) ..................................................................................26

*Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*,
    417 N.E.2d 541 (N.Y. 1981) .................................................................................................11

*Krasnow v. Catania*,
    197 N.Y.S.3d 70 (N.Y. App. Div. 2023) ...............................................................................14

*Lama Holding Co. v. Smith Barney Inc.*,
    668 N.E.2d 1370 (N.Y. 1996) .........................................................................................18, 19

*Lee Dodge, Inc. v. Sovereign Bank, N.A.*,
    51 N.Y.S.3d 531 (N.Y. App. Div. 2017) ...............................................................................25

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) .................................................................................................20

*Mandarin Trading Ltd. v. Wildenstein*,
    944 N.E.2d 1104 (N.Y. 2011) .........................................................................................22, 23

*Megaris Furs, Inc. v. Gimbel Bros., Inc.*,
    568 N.Y.S.2d 581 (N.Y. App. Div. 1991) .............................................................................22

*Messner Vetere Berger McNamee Schmetterer Euro RSCG v. Aegis Grp. PLC*,
    711 N.E.2d 953 (N.Y. 1999) ................................................................................................11

*Miller v. United States ex rel. Miller*,
    110 F.4th 533 (2d Cir. 2024) ...............................................................................................19

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993) .................................................................................................20

*Moustakis v. Christie's, Inc.*,
    892 N.Y.S.2d 83 (N.Y. App. Div. 2009) ...............................................................................22

*MREF REIT Lender 2 LLC v. FPG Maiden Holdings LLC*,
    225 N.Y.S.3d 1 (N.Y. App. Div. 2024) .................................................................................26

*N.Y. Univ. v. Cont'l Ins. Co.*,
    662 N.E.2d 763 (N.Y. 1995) ................................................................................................21

*Najjar v. Nat'l Kinney Corp.*,
    465 N.Y.S.2d 590 (N.Y. App. Div. 1983) .............................................................................10

*New WTC Retail Owner LLC v. Pachanga, Inc.*,
    76 N.Y.S.3d 128 (N.Y. App. Div. 2018) ..........................................................................22, 24

*Nugent v. Hubbard*,
15 N.Y.S.3d 71 (N.Y. App. Div. 2015) ...................................................................................25

*Pate v. BNY Mellon–Alcentra Mezzanine III, LP*,
81 N.Y.S.3d 29 (N.Y. App. Div. 2018) ..................................................................................21

*Prospect St. Ventures I, LLC v. Eclipsys Sols. Corp.*,
804 N.Y.S.2d 301 (N.Y. App. Div. 2005) ..............................................................................14

*Rapp v. Rapp*,
97 N.Y.S.3d 57, 2018 WL 1041692 (N.Y. Sup. Ct. Feb. 13, 2018).......................................21

*Saska v. Metro. Museum of Art*,
975 N.Y.S.2d 605 (N.Y. Sup. Ct. 2013) ................................................................................13

*Scifo v. Taibi*,
156 N.Y.S.3d 40 (N.Y. App. Div. 2021) ................................................................................25

*Shea v. Hambros PLC*,
673 N.Y.S.2d 369 (N.Y. App. Div. 1998) ...................................................................19, 20, 22

*Skillgames, LLC v. Brody*,
767 N.Y.S.2d 418 (N.Y. App. Div. 2003) ..............................................................................21

*Snyder v. Bronfman*,
921 N.E.2d 567 (N.Y. 2009)..................................................................................................10

*Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*,
403 F. Supp. 3d 257 (S.D.N.Y. 2019).....................................................................................6

*Suber v. Churchill Owners Corp.*,
214 N.Y.S.3d 1 (N.Y. App. Div. 2024) ..............................................................................20, 22

*Transamerica Corp v. Braes Woods Condo. Ass'n*,
580 S.W.3d 733 (Tex. Ct. App. 2019) .....................................................................................6

*Von Ancken v. 7 E. 14 L.L.C.*,
98 N.Y.S.3d 32 (N.Y. App. Div. 2019) .....................................................................................9

*Waterscape Resort LLC v. McGovern*,
967 N.Y.S.2d 368 (N.Y. App. Div. 2013) ..............................................................................23

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
127 F. Supp. 3d 156 (S.D.N.Y. 2015).......................................................................................1

*Zazu, Inc. v. Manor*,
539 N.Y.S.2d 348 (N.Y. App. Div. 1989) ..............................................................................20

**Statutes**

Iowa Code Ann. § 489.708 ..............................................................................................7

Iowa Code Ann. § 489.709 ..............................................................................................7

Iowa Code Ann. § 490.1405 ............................................................................................7

N.Y. Gen Oblig. Law § 5-701(a)(10) ............................................................................10

N.Y. Gen Oblig. Law § 5-703..........................................................................................11

N.Y. Gen Oblig. Law § 5-703(2).....................................................................................10

N.Y. Gen Oblig. Law § 15-301(1)....................................................................................8

N.Y. Real Prop. Law § 440-a..........................................................................................15

N.Y. Real Prop. Law § 442-d .....................................................................................2, 15

N.Y. U.C.C. Law § 9-334 ...............................................................................................25

Official Code of Georgia Annotated § 43-40-29 ............................................................2

Official Code of Georgia Annotated § 43-40-30 ..........................................................15

Texas Tax Code Section 171.252 .....................................................................................6

Texas Tax Code Section 171.309 .....................................................................................6

**Other Authorities**

Fed. R. Civ. P. 9(b) .........................................................................2, 5, 19, 20, 22, 28

Fed. R. Civ. P. 17(b) .........................................................................................................6

Fed. R. Civ. P. 12(b)(6).....................................................................................................5

Plaintiffs AFN ABSPROP001, LLC ("AFN") and ARG ME19PCK001, LLC ("ARG") (collectively, "Plaintiffs" or "Landlords") respectfully move this Court for an order pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) dismissing all eleven counterclaims asserted by Defendants Imperial Reliance, LLC ("Imperial Reliance" or "Tenant") and Kings Oil Company, LLC ("Kings Oil" or "Guarantor") (collectively, "Defendants") in their First Amended Verified Answer with Counterclaims (Dkt. No. 16, the "Amended Answer").

This is a straightforward commercial landlord-tenant dispute. Plaintiffs at all relevant times owned thirty-nine parcels of real property in Georgia (the "GA 39" or "Properties") and leased them to Imperial Reliance under three Master Lease Agreements. Compl. ¶¶ 8–10; Compl. Exs. A–F. Kings Oil guaranteed Imperial Reliance's obligations under each Master Lease. Compl. ¶ 18; Compl. Exs. J–L. Defendants defaulted on their rent and other monetary obligations, accruing substantial arrears (Compl. ¶¶ 23–27), and Plaintiffs terminated the leases. Compl. ¶ 30; Compl. Exs. G–I. Plaintiffs filed this action to recover those arrears and other contractual amounts. Compl. ¶ 1.

In response, Defendants have asserted a sprawling array of eleven counterclaims seeking tens of millions of dollars. Each is legally infirm. As a threshold matter, both Defendants lack the legal capacity to maintain their counterclaims. The Texas Secretary of State forfeited Kings Oil's corporate charter on September 5, 2025, stripping it of the right to sue in any court. Imperial Reliance was administratively dissolved under Iowa law on August 18, 2025, limiting its activities to winding up its affairs. Neither entity has cured its deficiency. *See* Exhibits 1 and 2 to the Declaration of Andrew Silfen ("Silfen Decl.").[1]

---

[1] "Courts routinely take judicial notice of such governmental records." *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (citations omitted).

But even if Defendants had capacity to sue, their counterclaims would fail on the merits. At their core, the counterclaims rest on two untenable narratives. First, Defendants claim that an entirely oral "Subsequent Agreement" entitled Kings Oil to $10,000,000 from Plaintiffs in connection with the sale of the GA 39 to HZ Properties & Marketing, LLC ("HZ Properties") (Am. Answer ¶¶ 159-160). Second, Defendants claim that vague and unparticularized oral promises made years earlier induced them to lease the Properties and invest in improvements (Am. Answer ¶¶ 248-249).

Both narratives crumble under even cursory legal scrutiny. The alleged oral agreements are barred by the statute of frauds, the leases' entire agreement clauses, and the no-oral-modification provisions. The fraud claims fails to meet Rule 9(b)'s heightened pleading standard. And the remaining tort and quasi-contract claims are either duplicative of the contract claims or precluded as a matter of law. Moreover, to the extent any counterclaims are asserted by Kings Oil in its capacity as Guarantor, the Guaranties' broad waiver of setoff, counterclaim, recoupment, and defenses (Compl. Exs. J–L §§ 1, 6) independently bars those claims — including, but not limited to, the First, Third, Fourth, Sixth, and Eleventh Counterclaims.

Defendants' counterclaims are further undermined by a fundamental lack of standing. Many of the key documents on which Defendants rely were executed by Kings Investment Inc. ("Kings Investment"), not Kings Oil Company, LLC. These documents include the Parties' PSAs, the termination notices, and the Agreement Between Kings Oil and HZ Properties. Yet Kings Investment is not a party to this action. Furthermore, to the extent Defendants seek recovery of a broker's or finder's fee, New York Real Property Law § 442-d and Official Code of Georgia Annotated § 43-40-29 independently bar such claim. These statutes prohibit unlicensed persons

2

from recovering compensation for brokerage services. Defendants have not alleged that Kings Oil held a real estate broker's license in either state. The fee sought is therefore unlawful.

Every one of Defendants' eleven counterclaims should be dismissed with prejudice.

## STATEMENT OF FACTS

### The Parties and the Master Leases

Plaintiffs AFN and ARG at all relevant times were the fee owners of the GA 39, a portfolio of thirty-nine gas station and convenience store properties located in Georgia. Compl. ¶ 8; Compl. Exs. A–C. Imperial Reliance is the tenant under three Master Lease Agreements: the AFN 18 Master Lease, the AFN 3 Master Lease, and the ARG 18 Master Lease (collectively, the "Master Leases"), each as amended. Compl. ¶¶ 9–10, Exs. D–F. Kings Oil is the guarantor under three corresponding guaranties (the "Guaranties"). Compl. ¶ 18, Exs. J–L. Defendants do not dispute or challenge the execution, validity, or enforceability of the Master Leases or Guaranties. Defendants also do not dispute or challenge that they breached the Master Leases, that Events of Default have occurred, or that rent arrears exist under the Master Leases.

The Master Leases contain several critical provisions relevant to this motion. Section 18.18 provides: "This Lease and any other instruments or agreements referred to herein, constitute the entire agreement between the parties with respect to the subject matter hereof, and there are no other representations, warranties or agreements except as herein provided." Compl. Exs. D–F § 18.18. Section 18.14 provides: "No provision of this Lease shall be deemed waived or amended except by a written instrument unambiguously setting forth the matter waived or amended and signed by the party against which enforcement of such waiver or amendment is sought." Compl. Exs. D–F § 18.14.

The Guaranties similarly contain broad anti-reliance and waiver provisions. Section 18 of each Guaranty provides that it "embodies the entire agreement of the parties and supersedes all

3

prior agreements and the understandings, oral or written, relating to the subject matter hereof." Section 1 requires Kings Oil to pay "without set-off, counterclaim, recoupment, or deduction." Section 6 states that Kings Oil's obligations shall not be impaired by "any setoff, defense, counterclaim, abatement, recoupment, reduction, change in law or any other event or circumstance which might otherwise constitute a legal or equitable discharge or defense." Compl. Exs. J–L §§ 1, 6.

### The PSAs, Termination, and the HZ LOI

On or about July 1, 2024, Kings *Investment* (not a party to this action) and Plaintiffs entered into a Letter of Intent for Kings Investment to purchase the GA 39 for $65,000,000. Am. Answer ¶ 151, Ex. 1. Thereafter, these parties entered into Purchase and Sale Agreements (the "Parties' PSAs"). Am. Answer ¶¶ 152–153, Exs. 2–3. Separately, on or about August 23, 2024, Kings *Investment* entered into a purchase and sale agreement with HZ Properties for $75,000,000 (the "Alleged Agreement Between Kings Oil and HZ Properties"). Am. Answer ¶ 155, Ex. 4.

The Amended Answer alleges that Kings Oil "executed written termination notices" on October 10, 2024. Am. Answer ¶ 161. But the termination notices themselves, attached as Defendants' own Exhibit 5, are dated October 30, 2024. Am. Answer Ex. 5. This twenty-day discrepancy between Defendants' allegations and their own documentary evidence is yet another internal inconsistency that undermines the credibility of the counterclaims. In either case, Kings Investment, not Plaintiffs, voluntarily terminated the Parties' PSAs. The termination notices stated plainly: "you are hereby notified that Kings Investment Inc is terminating the PSA, effective immediately." Am. Answer Ex. 5.

After Kings Investment terminated the PSAs, Plaintiffs entered into a Letter of Intent with HZ Properties on November 5, 2024 (the "HZ LOI"), followed by a purchase and sale agreement. Am. Answer ¶ 162, Ex. 6. The HZ LOI states that "Kings Oil assisted in putting the parties in this

4

letter of intent together and shall be paid a finder's fee equal to $10,000,000, to be paid by Buyer."

In other words, HZ Properties, not Plaintiffs, was to pay the finder's fee. Am. Answer ¶ 162, Ex.

6. On May 23, 2025, Plaintiffs terminated the Master Leases due to Defendants' persistent non-payment and subsequently filed this action to recover the arrears, accelerated rent, and other amounts due.

### **LEGAL STANDARD**

On a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the non-movant's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the Court need not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* A claim survives only if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Where a claim sounds in fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard, requiring that "the circumstances constituting fraud . . . [be] state[d] with particularity." Fed. R. Civ. P. 9(b).

On a motion to dismiss counterclaims, the Court may consider documents attached to or incorporated by reference in the pleading, as well as documents of which the Court may take judicial notice. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). "[W]here a contract on which an action is based is in writing and it is attached to the complaint as an exhibit, if there is a variance between the contract and the allegations of the complaint, the terms of the contract must control." *I & I Holding Corp. v. Gainsburg*, 296 N.Y.S. 752, 754 (N.Y. App. Div. 1937), *aff'd*, 12 N.E.2d 532 (N.Y. 1938); *7 Mansion, LLC v. Calvano*, 209 N.Y.S.3d 490, 491 (N.Y. App. Div. 2024).

## ARGUMENT

### I.    BOTH DEFENDANTS LACK CAPACITY TO ASSERT COUNTERCLAIMS OR AFFIRMATIVE DEFENSES.

Federal Rule of Civil Procedure 17(b) provides that the capacity of a corporation to sue or be sued shall be determined "by the law under which it was organized." Fed. R. Civ. P. 17(b).

Kings Oil is organized under the laws of Texas. Compl. ¶ 7. On September 5, 2025, the Texas Secretary of State forfeited the charter of Kings Oil pursuant to Section 171.309 of the Texas Tax Code, after the Comptroller of Public Accounts certified grounds for forfeiture and Kings Oil failed to revive its forfeited privileges within 120 days. *See* Silfen Decl. ¶ 4, Ex. 1.

Under Texas Tax Code Section 171.252, if a corporation's privileges are forfeited for failure to pay franchise taxes, "the corporation shall be denied the right to sue or defend in a court of this state." Tex. Tax Code Ann. § 171.252. Texas courts consistently apply this rule. *See El T. Mexican Rests., Inc. v. Bacon*, 921 S.W.2d 247, 250 (Tex. Ct. App. 1995) (addressing lack of capacity after forfeiture of corporate charter and privileges); *Humble Oil & Refining Co. v. Blankenburg*, 235 S.W.2d 891, 894 (Tex. 1951) (holding forfeiture of charter denied corporation right to sue or defend in any court of the state except in a suit to forfeit its charter); *Transamerica Corp v. Braes Woods Condo. Ass'n*, 580 S.W.3d 733, 736 (Tex. Ct. App. 2019) ("At the time it filed suit, Transamerica had forfeited its corporate charter due to nonpayment of taxes. Therefore, it lacked capacity to sue."); *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 403 F. Supp. 3d 257, 267 (S.D.N.Y. 2019) ( "lack of capacity is grounds for dismissal"). Because Kings Oil forfeited its corporate charter, it lacks capacity to defend this lawsuit and raise affirmative claims and defenses.

Imperial Reliance is organized under the laws of Iowa. Compl. ¶ 6. The Iowa Secretary of State administratively dissolved *Imperial Reliance* on August 18, 2025. *See* Silfen Decl. ¶ 5, Ex. 2.

Iowa law authorizes the secretary of state to commence proceedings to administratively dissolve an LLC if it "does not deliver its biennial report required by section 489.212 to the secretary of state within sixty days after it is due." Iowa Code Ann. § 489.708. Under Iowa Code Ann. § 489.709, "[a] limited liability company administratively dissolved continues its existence but shall not carry on any business except that necessary to wind up and liquidate its business and affairs . . . ."

While dissolution does not automatically strip an entity of all capacity to litigate, Iowa law limits a dissolved entity's litigation authority to those proceedings that are "necessary to wind up" its business. Iowa Code Ann. § 490.1405; *see Flanagan Corp. v. Lake Cabin Partners, LLC*, 986 N.W.2d 874, 2022 WL 2824755, at *3 (Iowa Ct. App. July 20, 2022) (explaining that an administratively dissolved corporation is limited to winding-up activities such as notifying creditors or collecting corporate assets and addressing whether the "instant litigation was intended to assist the winding-up process").

Imperial Reliance's counterclaims suffer from the same defect. Imperial Reliance asserts eleven counterclaims seeking tens of millions of dollars in affirmative relief, yet none relates to winding up Imperial Reliance's affairs. The counterclaims do not seek to collect debts, dispose of assets, discharge liabilities, or notify creditors — the hallmarks of legitimate winding-up activity. *See* Iowa Code Ann. § 490.1405(1). If any lawsuit that might result in a monetary recovery qualified as "collecting assets," the statutory restriction on post-dissolution business activity would be meaningless. The law does not permit a dissolved entity to expand its estate through speculative affirmative litigation; it permits only the orderly liquidation of what already exists.

Moreover, Imperial Reliance's counterclaims are offensive, not defensive. Plaintiffs initiated this action to collect unpaid rent—a straightforward landlord-tenant dispute. Imperial

7

Reliance's counterclaims reflect the continuation of aggressive commercial litigation by an entity that no longer has the legal capacity to conduct such business.

Because Imperial Reliance's counterclaims are unrelated to winding up its affairs, they exceed the scope of the litigation capacity that Iowa law confers upon a dissolved LLC.

**II.    THE FIRST COUNTERCLAIM FOR BREACH OF THE ALLEGED "SUBSEQUENT AGREEMENT" MUST BE DISMISSED.**

Kings Oil's First Counterclaim alleges that Plaintiffs and Kings Oil entered into a "Subsequent Agreement" pursuant to which Plaintiffs would sell the GA 39 directly to HZ Properties and pay Kings Oil $10,000,000. Am. Answer ¶¶ 159–160. This claim fails on multiple independent grounds.

**A.    The Entire Agreement and No-Oral-Modification Clauses Bar the Claim.**

The alleged "Subsequent Agreement" is barred at the threshold by the Master Leases' no-oral-modification clause, the merger clause, and the Guaranties' anti-reliance provision.[2]

The no-oral-modification clause (Compl. Exs. D–F § 18.14) provides that no provision of the Master Leases "shall be deemed waived or amended except by a written instrument unambiguously setting forth the matter waived or amended and signed by the party against which enforcement of such waiver or amendment is sought." This clause has the force of statute under New York General Obligations Law § 15-301(1) and serves as the primary contractual bar to the First Counterclaim. *See Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC*, 4 N.E.3d 336, 344-45 (N.Y. 2013). The clause bars any oral agreement that would alter the parties' rights and obligations, whether labeled a "modification" or a "subsequent agreement," unless memorialized

---

[2] The Master Lease is binding on the Guarantor. *See* Compl. Exs. J–L, Guaranty § 19 (GUARANTOR HAS RECEIVED A COPY OF THE LEASE. GUARANTOR AGREES THAT THE PROVISIONS OF THE LEASE APPLY TO THIS GUARANTY. . . .).

in a signed writing. No such writing exists. *See DuBow v. Century Realty, Inc.*, 98 N.Y.S.3d 844, 845 (N.Y. App. Div. 2019). Defendants may attempt to escape this bar by characterizing the alleged "Subsequent Agreement" as a freestanding oral agreement outside the scope of the Master Leases. This characterization fails. The alleged agreement involves the same parties, concerns the same properties, and by Defendants' own account arose directly from the lease relationship. Defendants allege the $10,000,000 was to "recoup" investments made *as tenants*. Am. Answer ¶¶ 159–160.

The Master Leases' merger clause (Compl. Exs. D–F § 18.18) provides that the lease constitutes "the entire agreement between the parties" with "no other representations, warranties or agreements except as herein provided." This clause independently bars the First Counterclaim for the same reasons.

The Guaranties' anti-reliance clause provides a further basis for dismissal. Kings Oil specifically disclaimed reliance on "any statement, oral or written, not contained in this Guaranty or the other Lease . . . ." Compl. Exs. J–L § 18. While that clause most directly forecloses the reliance-based fraud counterclaims discussed *infra*, its sweeping language — disclaiming reliance on "*any*" oral statement, without limitation as to subject matter — also undercuts Kings Oil's ability to claim that it reasonably understood oral promises to create binding obligations outside the written agreements. *See Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 598-99 (N.Y. 1959); *Von Ancken v. 7 E. 14 L.L.C.*, 98 N.Y.S.3d 32, 34-35 (N.Y. App. Div. 2019).

Finally, the HZ LOI cannot satisfy the writing requirement of Section 18.14. The HZ LOI was executed between Plaintiffs and HZ Properties, not between Plaintiffs and Defendants. It assigns the $10,000,000 payment to HZ Properties. It is itself an unenforceable agreement to agree. *See infra* Section III.B; Am. Answer Ex. 6.

B.      **The Statute of Frauds Bars the Claim.**

The purported "Subsequent Agreement" is entirely oral. Am. Answer ¶ 159. No written agreement memorializing Plaintiffs' alleged obligation to pay Kings Oil $10,000,000 is alleged or produced. *See* Am. Answer ¶¶ 159–173. Stripped of its labels, the alleged "Subsequent Agreement" is nothing more than an oral agreement to pay Kings Oil $10,000,000 in compensation for allegedly facilitating the sale of the GA 39 to HZ Properties. Am. Answer ¶¶ 159–160. Regardless of how Defendants characterize this arrangement — whether as a "recoupment," a side payment, or an independent agreement — it is independently barred by the statute of frauds.

New York General Obligations Law § 5-701(a)(10) renders void any oral "contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting, or leasing of any real estate or interest therein."[3] By Defendants' own account, Kings Oil "assisted in putting the parties in this letter of intent together" (Am. Answer Ex. 6), and the $10,000,000 was allegedly compensation for facilitating the sale. *Snyder v. Bronfman*, 921 N.E.2d 567, 569-70 (N.Y. 2009). Defendants cannot recharacterize the payment to avoid the statute of frauds. *See Najjar v. Nat'l Kinney Corp.*, 465 N.Y.S.2d 590, 590-91 (N.Y. App. Div. 1983).

The HZ LOI does not satisfy the writing requirement. It assigns the payment to "Buyer" (HZ Properties), not Plaintiffs (Am. Answer Ex. 6). It characterizes the payment as a "finder's fee," which Defendants themselves call a mischaracterization (Am. Answer ¶ 177). It is an

---

[3] [3]Similarly, under New York General Obligations Law § 5-703(2), "[a] contract for the leasing for a longer period than one year, or for the sale, of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged." The alleged oral agreement, involving the sale of thirty-nine parcels of real property for $65,000,000 and a $10,000,000 side payment, also falls squarely within this statutory requirement.

10

unenforceable agreement to agree. *See infra* Section III.B. Moreover, New York General Obligations Law § 5-703 independently bars the claim to the extent the oral agreement is intertwined with the sale of the GA 39. *See Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Grp. PLC*, 711 N.E.2d 953, 955-56 (N.Y. 1999).

### C.    Defendants' Own Documents Expose the Claim's Implausibility.

Even setting aside the contractual and statutory bars, the First Counterclaim must be dismissed because the allegations surrounding the alleged "Subsequent Agreement" are internally contradictory and implausible on their face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Amended Answer is fatally vague about the most basic details of the alleged "Subsequent Agreement." Kings Oil does not allege when the agreement was formed, who negotiated it, what its specific terms were (beyond a conclusory reference to a $10,000,000 payment), or the circumstances under which it was reached. *See* Am. Answer ¶¶ 159–173. A breach of contract claim requires, at minimum, allegation of a contract with definite and essential terms. *See Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 417 N.E.2d 541, 543 (N.Y. 1981) ("definiteness as to material matters is of the very essence in contract law"). The alleged "Subsequent Agreement" has none.

The timeline of events alleged in the Amended Answer further exposes the implausibility of the claim. Kings Oil alleges that it terminated the Parties' PSAs on October 10, 2024 "in furtherance of, and in reliance on" the "Subsequent Agreement." Am. Answer ¶ 161. This necessarily implies that the "Subsequent Agreement" was formed *before* October 10, 2024. But Plaintiffs did not enter into the HZ LOI until November 5, 2024, almost a month *after* the termination. Am. Answer ¶ 162, Ex. 6. Defendants' own allegations thus require the Court to

accept the implausible proposition that the parties reached a binding oral agreement about a sale to HZ Properties *before* Plaintiffs had even entered into a letter of intent with HZ Properties. The counterclaims offer no explanation for this chronological impossibility.

This same chronological impossibility fatally undermines Defendants' allegations that Plaintiffs acted "surreptitiously." Am. Answer ¶ 202. The undisputed timeline — in which Kings *Investment* voluntarily terminated the Parties' PSAs *before* Plaintiffs entered into the HZ LOI — makes clear that Plaintiffs negotiated with HZ Properties only *after* Kings Investment had walked away from the deal. Am. Answer Exs. 5–6.

Moreover, the termination notices, attached as Exhibit 5, make no reference whatsoever to a "Subsequent Agreement," a $10,000,000 payment, or any understanding that Kings Oil would be compensated for stepping aside. They state only: "you are hereby notified that Kings Investment Inc is terminating the PSA, effective immediately." Am. Answer Ex. 5. Likewise, the HZ LOI, the only document that references a payment to Kings Oil, does not mention any "Subsequent Agreement" between Plaintiffs and Kings Oil. It characterizes the payment as a "finder's fee" payable by HZ Properties. Am. Answer Ex. 6. If a binding oral agreement worth $10,000,000 truly existed, one would expect it to be referenced in at least one of the contemporaneous written documents. Its total absence from every writing in the record renders the claim implausible.

Finally, if the parties had truly reached a binding oral agreement worth $10,000,000, it defies commercial logic that Kings Oil would terminate the PSAs, thereby relinquishing a contractual right to purchase the GA 39 for $65,000,000, without first reducing the alleged "Subsequent Agreement" to writing. The parties had demonstrated their ability to memorialize agreements through the LOI, the PSA, and the Alleged Agreement Between Kings Oil and HZ Properties. That they failed to do so here, for an agreement allegedly worth $10,000,000, is telling.

Moreover, the termination notices were signed by Kings Investment, not Kings Oil Company, LLC, raising a threshold standing question: Kings Oil has not adequately alleged that it was a party to the alleged "Subsequent Agreement."[4]

## III.    THE SECOND COUNTERCLAIM FOR BREACH OF CONTRACT AS THIRD-PARTY BENEFICIARY OF THE HZ LOI (FINDER'S FEE) MUST BE DISMISSED.

Kings Oil's Second Counterclaim alleges that Kings Oil is an intended third-party beneficiary of the HZ LOI, entitled to the $10,000,000 "finder's fee" referenced therein. Am. Answer ¶¶ 174–178. This claim fails for at least five independent reasons.

### A.    Kings Oil is not a Third-Party Beneficiary.

Under New York law, only an "intended" — not an "incidental" — beneficiary may enforce a contract to which it is not a party. *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 485 N.E.2d 208, 211-12 (N.Y. 1985). The Court of Appeals has recognized third-party beneficiary rights in only two narrow circumstances: "when the third party is the only one who could recover for the breach of contract or when it is otherwise clear from the language of the contract that there was 'an intent to permit enforcement by the third party.'" *Dormitory Auth. of the State of N.Y. v. Samson Constr. Co.*, 94 N.E.3d 456, 459 (N.Y. 2018) (quoting *Fourth Ocean Putnam*, 485 N.E.2d at 212). Neither circumstance exists here. The HZ LOI provides that Kings Oil "shall be paid a finder's fee equal to $10,000,000, to be paid by Buyer" — i.e., HZ Properties, not Plaintiffs. Am. Answer Ex. 6. The HZ LOI's plain language assigns the payment obligation entirely to HZ Properties. Kings Oil is thus, at most, an incidental beneficiary. *See Saska v. Metro.*

---

[4] Further, the alleged $10,000,000 claim would constitute consequential damages — lost anticipated profits from a collateral transaction with a non-party — that the Master Leases' broad limitations-on-damages provisions independently bar. Consequential damages are those "extraordinary in that they do not so directly flow from the breach." *Am. List Corp. v. U.S. News & World Rep., Inc.*, 549 N.E.2d 1161, 1164 (1989).

13

*Museum of Art*, 975 N.Y.S.2d 605, 615 (N.Y. Sup. Ct. 2013) ("Absent clear contractual language evincing such intent, New York courts have demonstrated a reluctance to interpret circumstances to construe such an intent." (citation omitted)).

Defendants' own allegations make their position even more untenable. They assert that the $10,000,000 was "purposely mischaracterized by Plaintiffs and HZ Properties as a 'finder's fee.'" Am. Answer ¶ 177.[5] A party cannot simultaneously claim to be an intended beneficiary of a contract provision and allege that the very same provision was fraudulently drafted to disguise its true purpose.

### B.      The HZ LOI Is an Unenforceable Agreement to Agree.

The HZ LOI was expressly subject to the execution of a "mutually agreeable" purchase and sale agreement, rendering it an unenforceable "agreement to agree" under New York law. *See Prospect St. Ventures I, LLC v. Eclipsys Sols. Corp.*, 804 N.Y.S.2d 301, 302 (N.Y. App. Div. 2005); *Krasnow v. Catania*, 197 N.Y.S.3d 70, 72 (N.Y. App. Div. 2023); *Breuer v. Feder*, 813 N.Y.S.2d 148, 149 (N.Y. App. Div. 2006). A non-binding letter of intent cannot serve as the basis for a third-party beneficiary claim.

### C.      Plaintiffs Did Not Breach.

The $10,000,000 was "to be paid by Buyer" — i.e., HZ Properties. Am. Answer Ex. 6. Kings Oil does not allege that Plaintiffs assumed or guaranteed HZ Properties' payment obligation.

---

[5] In *Imperial Reliance, LLC and Kings Investments, Inc. v. HZ Properties & Marketing, LLC and Hyder K. Lalani*, 3:25-cv-03349 (N.D. Tex.) (originally filed as No. DC-25-20498, in the District Court, 191st Judicial District, Dallas County, Texas, on October 30, 2025, and subsequently removed to federal court)— Imperial's Original Petition states without qualification: "Kings Oil was not paid the $10,000,000 'finder's fee,' or any fee at all for that matter." Original Petition ¶ 34, attached as Ex. 3 to Silfen Decl. Thus, Imperial Reliance affirms this characterization of a "finder's fee." *See Douds v. Seafarer's Int'l Union of N. Am.*, 148 F. Supp. 953, 956 (E.D.N.Y. 1957) ("Prior pleadings may constitute competent admissions, even though made in another proceeding.") (citation omitted).

14

Accordingly, even if the HZ LOI were enforceable, Plaintiffs did not breach any obligation running to Kings Oil. Moreover, the Guaranties' waiver provisions (Compl. Exs. J–L §§ 1, 6) independently bar this claim.

### D.    The Finder's Fee Is Unlawful.

Under New York Real Property Law §§ 440-a and 442-d, and the Official Code of Georgia Annotated § 43-40-30, payment of a finder's fee for real property transactions to an unlicensed party is unlawful and unenforceable. Defendants do not allege that Kings Oil holds a real estate broker's license in either New York or Georgia. A claim premised on an unlawful transaction cannot survive a motion to dismiss. *See Charlebois v. J.M. Weller Assocs.*, 531 N.E.2d 1288, 1291 (N.Y. 1988); N.Y. Real Prop. Law § 442-d (barring recovery of compensation for real estate services by unlicensed persons).

## IV.    THE THIRD COUNTERCLAIM FOR BREACH OF CONTRACT AS THIRD-PARTY BENEFICIARY OF THE HZ LOI (UNPAID LEASE AMOUNTS) MUST BE DISMISSED.

Defendants' Third Counterclaim alleges that Imperial Reliance and Kings Oil are third-party beneficiaries of the HZ LOI provision requiring HZ Properties to pay all unpaid amounts owed by Tenant under the leases (approximately $4,400,000). Am. Answer ¶¶ 190–194. This claim fails for the same threshold reasons as the Second Counterclaim: Kings Oil and Imperial Reliance are not parties to the HZ LOI, the HZ LOI is not an enforceable contract, and the alleged obligation to pay the "unpaid amounts" ran from HZ Properties to Plaintiffs — not to Defendants. Am. Answer ¶¶ 190–191, Ex. 6. The provision that HZ Properties would pay "all unpaid amounts owed by Tenant" was a term negotiated for Plaintiffs' benefit — to ensure Plaintiffs recouped amounts owed to them — not to discharge Defendants' own obligations. Moreover, the Guaranties expressly bar any such setoff.

15

## V.     THE FOURTH COUNTERCLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING MUST BE DISMISSED.

Defendants' Fourth Counterclaim alleges that Plaintiffs breached the implied covenant of good faith and fair dealing by selling the Properties to HZ Properties instead of to Defendants. Am. Answer ¶¶ 198–218. This claim fails for several independent reasons.

### A.     The Claim Is Duplicative.

Under New York law, a cause of action alleging breach of the implied covenant of good faith and fair dealing cannot survive where it is duplicative of a breach of contract claim. *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). Here, Defendants' allegations — that Plaintiffs sold the Properties directly to HZ Properties in bad faith — are based on the same underlying conduct and seek the same damages as their breach of contract counterclaims. *See Cruz v. FXDirectDealer, LLC,* 720 F.3d 115, 125 (2d Cir. 2013); *Empanada Fresca LLC v. 1 BK St. Corp.*, 236 N.Y.S.3d 10, 17-19 (N.Y. App. Div. 2025).

### B.     No Operative Contract Supports the Claim.

The implied covenant inheres in every contract but cannot exist independent of one. *See 511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002). Here, Kings Investment voluntarily terminated the Parties' PSAs on October 30, 2024. Am. Answer ¶ 161, Ex. 5. After termination, there was no operative contract between Plaintiffs and Kings Investment with respect to the sale of the GA 39. Plaintiffs were free to sell the Properties to any willing buyer.

### C.     The Implied Covenant Cannot Create New Obligations.

"The duty of good faith and fair dealing . . . is not without limits, and no obligation can be implied that 'would be inconsistent with other terms of the contractual relationship.'" *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291-92 (N.Y. 1995) (quoting *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 91 (N.Y. 1983)). The Master Leases do not restrict Plaintiffs' right to sell

16

the fee interest, and Section 18.22 expressly gives Plaintiffs the right to sever and split the lease in connection with a sale. Defendants' claim effectively seeks to impose a duty that the parties' detailed written agreements conspicuously omit — precisely what the implied covenant cannot do. The implied covenant "can only impose an obligation consistent with other mutually agreed upon terms in the contract. It does not add to the contract a substantive provision not included by the parties." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198-99 (2d Cir. 2005) (citation modified).

## VI.    THE FIFTH COUNTERCLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS MUST BE DISMISSED.

Defendants' Fifth Counterclaim alleges that Plaintiffs tortiously interfered with the Alleged Agreement Between Kings Oil and HZ Properties by negotiating directly with HZ Properties. Am. Answer ¶¶ 220–228. Even if Kings Oil could overcome the threshold standing deficiency discussed below, the tortious interference claim fails on the merits for multiple independent reasons.

### A.    Kings Oil Lacks Standing.

As a threshold matter, Kings Oil's tortious interference claim must be dismissed for lack of standing. The Alleged Agreement Between Kings Oil and HZ Properties (Am. Answer Ex. 4) was executed by Kings *Investment* Inc. — not Kings Oil Company, LLC. Kings Oil is not a signatory to this agreement, and Kings Investment is not a party to this action. Where the contract at issue was between Kings Investment and HZ Properties, Defendants cannot satisfy the threshold element of an existing contract to which they were party.

### B.    Kings *Investment* Voluntarily Terminated the PSAs.

Kings Investment itself terminated the Parties' PSAs — whether on October 10, 2024 as alleged in the Amended Answer (¶ 161) or on October 30, 2024 as reflected in the actual

17

termination notices (Ex. 5) — *before* Plaintiffs entered into the HZ LOI on November 5, 2024. Am. Answer ¶¶ 161–162, Exs. 5–6. Plaintiffs did not cause the termination; Kings Investment did. The allegation that Plaintiffs somehow induced HZ Properties to breach an agreement with Kings *Oil* rings hollow when Kings *Investment* itself had already walked away from the deal.

### C.   Defendants Fail to Allege Wrongful Means.

New York law requires that the defendant's conduct employ "wrongful means" — defined as "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 449 (N.Y. 1980). Defendants allege only that Plaintiffs negotiated directly with HZ Properties (Am. Answer ¶¶ 202, 223) — the essence of ordinary competitive business conduct. The allegations that Plaintiffs acted "surreptitiously" and "secretly" (Am. Answer ¶¶ 202, 206) are wholly conclusory and devoid of any specific factual support. Such conclusory allegations, without specific factual support, are insufficient to survive dismissal. *Havana Cent. NY2 LLC v. Lunney's Pub, Inc.*, 852 N.Y.S.2d 32, 35 (N.Y. App. Div. 2007); *Jacobs v. Continuum Health Partners, Inc.*, 776 N.Y.S.2d 279, 280-81 (N.Y. App. Div. 2004) (dismissing tortious interference claim where plaintiff failed to allege "specific facts that could support an inference that defendants were motivated solely by a desire to harm [or] . . . specific facts that, if proven, would show that the [actions taken were] . . . otherwise independently wrongful") (citation omitted).

### D.   Defendants Fail to Allege Actual Breach.

Tortious interference with contract requires, as an essential element, "actual breach of the contract" by the third party. *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996). The Amended Answer does not clearly allege that HZ Properties actually breached any agreement with Kings Oil. Defendants allege only that Plaintiffs "interfere[d]" with an agreement (Am. Answer ¶¶ 220–228), but interference and breach are distinct elements, and Defendants must

18

plead both. The failure to adequately allege that HZ Properties breached an agreement with Kings Oil is independently fatal to this claim.

## VII. THE SIXTH COUNTERCLAIM FOR FRAUDULENT INDUCEMENT (INDUCEMENT TO TERMINATE PSAS) MUST BE DISMISSED.

Defendants' Sixth Counterclaim alleges that Plaintiffs fraudulently induced Kings Oil to terminate the Parties' PSAs by falsely promising that Kings Oil would receive $10,000,000 following Plaintiffs' direct sale to HZ Properties. Am. Answer ¶¶ 234–235.[6]

### A. The Claim Fails Under Rule 9(b).

Federal Rule of Civil Procedure 9(b) requires that fraud allegations be pled with particularity, including "the who, what, when, where, and how" of the alleged misrepresentations. *Miller v. United States ex rel. Miller*, 110 F.4th 533, 544 (2d Cir. 2024) (citation modified); *ATSI,* 493 F.3d at 99. To sustain a cause of action for fraudulent inducement, a plaintiff must show "misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996) (citations omitted); *accord Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009). "Such a claim, like any fraud cause of action, must set forth the circumstances constituting the wrong in detail." *Shea v. Hambros PLC*, 673 N.Y.S.2d 369, 373 (N.Y. App. Div. 1998) (citation modified) (quoting CPLR 3016(b)).

Defendants fail to allege with the requisite specificity who made the representations on behalf of Plaintiffs, when or where the representations were made, or the specific words used. The

---

[6] Exhibits 2 and 3 to the Amended Answer demonstrate that Kings Oil was not a party to the PSA. Thus, Kings Oil lacks standing to raise this claim.

counterclaim refers only vaguely to "Plaintiffs' Representations" (Am. Answer ¶ 234) without identifying any individual speaker, date, location, or medium of communication. This level of generality is precisely what Rule 9(b) prohibits. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (fraud claim dismissed where plaintiff failed to identify specific individuals who made alleged misrepresentations). Indeed, the First Department has held that fraudulent inducement claims that are "'bare-bones,' without referencing, for example, specific places and dates of the alleged misrepresentations," must be dismissed. *Fariello v. Checkmate Holdings, LLC*, 918 N.Y.S.2d 408, 409 (N.Y. App. Div. 2011) (citing *Nicosia v. Bd. of Managers of the Weber House Condo.*, 909 N.Y.S.2d 412, 415 (N.Y. App. Div. 2010)). "Of course, if sufficient factual allegations of even a single element are lacking, then the cause of action must be dismissed." *Shea*, 673 N.Y.S.2d at 373 (citation omitted).

### B.     The Claim Is Barred by the Contractual Provisions.

The merger clause, no-oral-modification clause, and anti-reliance provisions bar this claim. *See Zazu, Inc. v. Manor*, 539 N.Y.S.2d 348, 349 (N.Y. App. Div. 1989) (lease provision defeats tenant's fraudulent inducement claim); *Danann Realty Corp.*, 157 N.E.2d at 598-99. The First Department has held that "specific disclaimers and a merger clause bar claims arising out of reliance on purported representations, such as the fraud, fraud in the inducement, fraudulent concealment, and negligent misrepresentation claims . . . ." *Suber v. Churchill Owners Corp.*, 214 N.Y.S.3d 1, 3 (N.Y. App. Div. 2024) (citing *Von Ancken*, 98 N.Y.S.3d at 34).

### C.     The HZ LOI Contradicts the Counterclaim.

Defendants' own Exhibit 6 describes the $10,000,000 as a "finder's fee" to be paid "by Buyer" (HZ Properties), not by Plaintiffs. This directly contradicts the allegation that Plaintiffs promised to pay Kings Oil $10,000,000. A court need not credit factual allegations that are "clearly

contradicted by documentary evidence." *Skillgames, LLC v. Brody*, 767 N.Y.S.2d 418, 421 (N.Y. App. Div. 2003).

### D.    The Fraud Claim Cannot Circumvent the Statute of Frauds.

To the extent this claim seeks to recover the same $10,000,000, the statute of frauds independently bars it. A party "may not re-characterize a breach of contract as a claim of fraud to circumvent the statute of frauds." *Rapp v. Rapp*, 97 N.Y.S.3d 57, 2018 WL 1041692, at *2 n.2 (N.Y. Sup. Ct. Feb. 13, 2018).

### E.    Promises of Future Performance Are Not Actionable Fraud.

Under New York law, "[a] 'mere promissory statement as to what will be done in the future' is not actionable" as fraud. *6340 NB LLC v. Cap. One N.A.*, No. 20-cv-02500, 2024 WL 4100184, at *7 (E.D.N.Y. Sept. 5, 2024) (quoting *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 502 N.E.2d 1003, 1004 (N.Y. 1986)). "General allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support the claim." *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995); *see also 767 Third Ave. LLC v. Greble & Finger*, LLP, 778 N.Y.S.2d 157, 158 (N.Y. App. Div. 2004). A fraud claim based on future promises requires specific allegations that the promisor had "a preconceived and undisclosed intention of not performing." *See Deerfield Commc'ns Corp.*, 502 N.E.2d at 1004. Defendants make no such allegations. *See* Am. Answer ¶¶ 234–244. The fraudulent inducement claim is therefore "duplicative of the breach of contract claim, since it is predicated on an alleged expression of a future expectation or intent to perform, rather than on a misrepresentation of present fact." *Pate v. BNY Mellon–Alcentra Mezzanine III, LP*, 81 N.Y.S.3d 29, 30 (N.Y. App. Div. 2018) (citing *Laduzinski v. Alvarez & Marsal Taxand LLC*, 16 N.Y.S.3d 229, 232 (N.Y. App. Div. 2015)). More broadly, where a fraud claim arises from the same facts and seeks the same damages as a breach of contract claim, it must be dismissed as duplicative regardless of how it is

21

framed. *See Moustakis v. Christie's, Inc.*, 892 N.Y.S.2d 83, 84 (N.Y. App. Div. 2009) ("The allegations of fraud and negligent misrepresentation are virtually identical to those upon which the causes of action for breach of contract and breach of warranty rest, and are thus duplicative, inasmuch as there is no pleading of the breach of duty separate and apart from the contractual obligation owed to plaintiff.").

## VIII.   THE SEVENTH COUNTERCLAIM FOR FRAUDULENT INDUCEMENT (INDUCEMENT TO LEASE) MUST BE DISMISSED.

Defendants' Seventh Counterclaim alleges that Plaintiffs represented that Defendants would "recoup their investments" in the GA 39, inducing Defendants to lease and improve the Properties. Am. Answer ¶¶ 248–249. This claim suffers from the same fatal defects as the Sixth Counterclaim and must be dismissed for substantially similar reasons. First, the claim fails to meet Rule 9(b)'s particularity requirements — the counterclaim does not identify who made the alleged representations, when, or the precise words used. *See* Am. Answer ¶¶ 248, 255; *Megaris Furs, Inc. v. Gimbel Bros., Inc.*, 568 N.Y.S.2d 581, 582-83 (N.Y. App. Div. 1991).

Second, the merger clause (Compl. Exs. D–F § 18.18) and no-oral-modification clause (Compl. Exs. D–F § 18.14) bar the claim. *See New WTC Retail Owner LLC v. Pachanga, Inc.*, 76 N.Y.S.3d 128, 129 (N.Y. App. Div. 2018). Third, vague promises that Defendants would "recoup their investments" are non-actionable statements of future expectation, not representations of present fact. *See Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1108-09 (N.Y. 2011). Fourth, sophisticated commercial parties who signed leases with broad merger clauses cannot claim justifiable reliance on unwritten oral representations. *See Suber v. Churchill Owners Corp.*, 214 N.Y.S.3d 1, 3 (N.Y. App. Div. 2024); *Shea v. Hambros PLC*, 673 N.Y.S.2d 369, 373-74 (N.Y. App. Div. 1998).

IX.   **THE EIGHTH COUNTERCLAIM FOR NEGLIGENT MISREPRESENTATION MUST BE DISMISSED.**

Defendants' Eighth Counterclaim alleges negligent misrepresentation based on the same alleged oral statements about recouping investments. Am. Answer ¶¶ 258–267.

A.   **No Special or Privity-Like Relationship Exists.**

A claim for negligent misrepresentation requires "the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011); *J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585, 587 (N.Y. 2007). "[A] special relationship of trust and confidence does not arise merely from an arm's-length business transaction." *Waterscape Resort LLC v. McGovern*, 967 N.Y.S.2d 368, 369 (N.Y. App. Div. 2013) (citation omitted). "A special relationship does not arise out of an ordinary arm's length business transaction between two parties." *High Tides, LLC v. DeMichele*, 931 N.Y.S.2d 377, 383 (N.Y. App. Div. 2011) (citation omitted). In *CBH Medical, P.C. v. Merit Systems LLC*, the court dismissed a negligent misrepresentation claim because the parties' agreement did not give rise to "the type of special relationship that could be the predicate for a negligent-misrepresentation claim." No. 151859/2021, 2022 WL 16963754, at *1 (N.Y. Sup. Ct. 2022) (citation omitted). "Absent a confidential or fiduciary relationship, defendants did not have a duty of disclosure." *Bd. of Managers of Chelsea 19 Condo. v. Chelsea 19 Assocs.*, 905 N.Y.S.2d 8, 10 (N.Y. App. Div. 2010).

The relationship between Plaintiffs and Defendants is a conventional arm's-length commercial landlord-tenant relationship. Nothing in the Amended Answer suggests any specialized expertise, fiduciary capacity, or relationship of trust and confidence between the parties beyond ordinary commercial dealing. *See* Am. Answer ¶ 259. The First Department has held in analogous circumstances that a tenant cannot assert a negligent misrepresentation claim against its

23

landlord because the parties "were engaged in an arm's-length business transaction." *New WTC Retail Owner LLC v. Pachanga, Inc.*, 76 N.Y.S.3d 128, 130 (N.Y. App. Div. 2018) (citation omitted); *see also Dembeck v. 220 Cent. Park S., LLC*, 823 N.Y.S.2d 45, 47 (N.Y. App. Div. 2006).

### B.    The Claim Is Duplicative and Barred by the Contractual Provisions.

The negligent misrepresentation claim is based on the same alleged wrongful conduct and seeks the same damages as the breach of contract claims. *See Gale v. Animal Med. Ctr.*, 968 N.Y.S.2d 563, 564-65 (N.Y. App. Div. 2013). Moreover, for the same reasons articulated in Section II.A above, the merger clause and no-oral-modification provisions independently bar this claim.

### X.    THE NINTH COUNTERCLAIM FOR CONVERSION MUST BE DISMISSED.

Defendants' Ninth Counterclaim alleges that Plaintiffs "directly or indirectly exercised dominion and control" over Defendants' personal property, including store equipment, fixtures, and business assets, in connection with the sale of the Properties to HZ Properties. Am. Answer ¶¶ 269–270.

### A.    Plaintiffs Hold a Perfected Security Interest in the Personal Property.

Section 17.01 of the Master Leases grants Plaintiffs a lien and security interest in Defendants' personal property located at the Properties. Plaintiffs perfected that security interest through UCC financing statements. Compl. Exs. D–F § 17.01.

### B.    Plaintiffs Never Took Possession of or Disposed of the Personal Property.

Defendants' conversion claim is fatally deficient because the Amended Answer does not allege that Plaintiffs actually took possession of, exercised dominion over, or disposed of any specific item of Defendants' personal property. Defendants allege only, upon information and belief, that Plaintiffs "directly or indirectly exercised dominion and control" over personal property "in connection with" the sale to HZ Properties. Am. Answer ¶ 270. But the Amended Answer does

not identify any act by which Plaintiffs actually seized, transferred, or otherwise disposed of the personal property. The documents attached to the Amended Answer — including the HZ LOI and the PSA Between Plaintiffs and HZ Properties — reflect a sale of the fee interest in the real property and attached fixtures,[7] not a transfer of Defendants' personal property. Am. Answer Exs. 6–7.[8]

### C.    The Claim Fails to Identify Specific Property.

The conversion claim is fatally deficient because the Amended Answer does not identify any specific item of personal property over which Plaintiffs allegedly exercised dominion. Defendants allege only, upon information and belief, that Plaintiffs "directly or indirectly exercised dominion and control" over personal property "in connection with" the sale. Am. Answer ¶ 270. A conversion claim requires identification of "specifically identifiable" property; vague, conclusory allegations are insufficient. *See Lee Dodge, Inc. v. Sovereign Bank, N.A.*, 51 N.Y.S.3d 531, 533 (N.Y. App. Div. 2017) (conversion claim properly dismissed where complaint "does not specify any identifiable piece of property or specifically identifiable funds"); *CSI Grp., LLP v. Harper*, 61 N.Y.S.3d 592, 599 (N.Y. App. Div. 2017); *Scifo v. Taibi*, 156 N.Y.S.3d 40, 43-44 (N.Y. App. Div. 2021).

---

[7] To the extent Defendants seek to recover for fixtures — items affixed to the real property — those items became part of the realty upon installation and are not subject to a conversion claim. Under New York law, fixtures pass with the sale of real property absent a contrary agreement. *See generally* N.Y. U.C.C. Law § 9-334.

[8] Moreover, Plaintiffs had the right to take possession of any collateral, even if t*hey* did not exercise this right. *See Nugent v. Hubbard*, 15 N.Y.S.3d 71, 73 (N.Y. App. Div. 2015) (indicating that "[a]fter default, a secured party may sell, lease, license or otherwise dispose of any or all of the collateral in its present condition"). Imperial Reliance has already admitted a default. *See* Silfen Decl. Ex. 3, Original Petition, in which Imperial Reliance affirmatively alleged that because HZ Properties "failed to pay rent on the Sublease, Plaintiffs in turn could not pay rent on the Master Leases." Silfen Decl. Ex. 3 ¶¶ 25-26; *see also* Silfen Decl. Ex. 4 at 2, Joint Rule 26(f) Report, *Imperial Reliance, LLC v. HZ Props. & Mktg., LLC*, No. 3:25-CV-03349-K (N.D. Tex.).

Moreover, Defendants' own allegations in the Amended Answer undermine their conversion claim. The counterclaim alleges conversion only "upon information and belief" and in entirely conclusory terms, without identifying any specific act by which Plaintiffs allegedly interfered with Defendants' possessory rights. Am. Answer ¶¶ 270–276. This is precisely the type of speculative, unparticularized pleading that fails to state a claim for conversion.

### D.      The Claim Is Duplicative.

The conversion claim arises from the same underlying transaction as the breach of contract claims and seeks the same compensatory damages. *See ABL Advisor LLC v. Peck*, 49 N.Y.S.3d 35, 38 (N.Y. App. Div. 2017); *Johnson v. Cestone*, 80 N.Y.S.3d 15, 17 (N.Y. App. Div. 2018) (conversion claims "are duplicative of the breach of contract claims, i.e., they are predicated on breaches of contract and allege no facts that would give rise to tort liability" (citation omitted)).

### XI.    THE TENTH COUNTERCLAIM FOR UNJUST ENRICHMENT MUST BE DISMISSED.

Defendants' Tenth Counterclaim alleges that Plaintiffs were unjustly enriched by Defendants' investments in the Properties, which allegedly increased the Properties' value and enabled Plaintiffs to sell the GA 39 for $71,300,000. Am. Answer ¶¶ 279–284.

"The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) (citations omitted). The Master Leases and Guaranties govern the subject matter of Defendants' improvements and obligations. *See MREF REIT Lender 2 LLC v. FPG Maiden Holdings LLC*, 225 N.Y.S.3d 1, 5 (N.Y. App. Div. 2024). Moreover, Defendants voluntarily undertook improvements pursuant to their lease obligations and business judgment (Am. Answer ¶¶ 280–281), and the

unjust enrichment doctrine "is not a catchall cause of action to be used when other [causes of action] fail." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).

To the extent this claim seeks to recover the value of an unenforceable oral agreement, it cannot circumvent the statute of frauds. *See Am.–Eur. Art Assoc. v. Trend Galleries, Inc.*, 641 N.Y.S.2d 835, 836 (N.Y. App. Div. 1996). Finally, the allegations are speculative and conclusory — the counterclaim fails to identify any specific improvements that contributed to the Properties' sale value. *See Alpha/Omega Concrete Corp. v. Ovation Risk Planners, Inc.*, 154 N.Y.S.3d 113, 122-23 (N.Y. App. Div. 2021).

## XII.    THE ELEVENTH COUNTERCLAIM FOR OFFSET/SETOFF MUST BE DISMISSED.

Defendants' Eleventh Counterclaim seeks to offset any amounts owed to Plaintiffs against the damages claimed in the other ten counterclaims. Am. Answer ¶¶ 293–296.

### A.    The Claim Is Wholly Derivative.

The offset claim is entirely derivative of the other ten counterclaims. If those counterclaims are dismissed — as they should be — the offset claim necessarily fails. An offset is not an independent cause of action; it is a mechanism for reducing liability based on cross-obligations. Where no cross-obligation exists, there is nothing to offset.

### B.    The Guaranties Expressly Bar Setoff.

Section 1 of the Guaranties provides that all obligations are owed "without set-off, counterclaim, recoupment, or deduction." Section 6 further provides that Guarantor's obligations "shall not be affected or impaired by . . . any setoff, defense, counterclaim, abatement, recoupment, reduction, change in law or any other event or circumstance which might otherwise constitute a legal or equitable discharge or defense . . . ." Compl. Exs. J–L. New York courts routinely enforce such waivers. *See Citibank, N.A. v. Plapinger*, 485 N.E.2d 974, 976-77 (N.Y. 1985); *Cooperatieve*

27

*Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 36 N.E.3d 80, 85 (N.Y. 2015); *Arbor– Myrtle Beach PE LLC v. Frydman*, 158 N.Y.S.3d 821, 821-22 (N.Y. App. Div. 2022). The amounts due and owing under the Guaranties are unconditionally due and owing.

## CONCLUSION

Defendants' eleven counterclaims are a transparent attempt to avoid accountability for their undisputed lease defaults and unconditional and absolute obligations under the Guaranties by burying this straightforward collection action under an avalanche of legally infirm claims. Every counterclaim founders on the same fundamental problem: Defendants ask this Court to enforce oral promises that are flatly contradicted by the written agreements the parties actually signed.

The alleged "Subsequent Agreement" is barred by the Master Leases' merger and no-oral-modification clauses, the Guaranties' anti-reliance provisions, and the statute of frauds. The third-party beneficiary claims rest on an unenforceable letter of intent that assigns the payment obligation to a non-party. The fraud claims fail Rule 9(b)'s particularity requirements and are independently barred by the same contractual provisions. The tort and quasi-contract claims are duplicative of the contract claims or precluded as a matter of law. And Defendants' own exhibits — particularly the termination notices signed by Kings Investment Inc. and the HZ LOI assigning the $10,000,000 payment to HZ Properties — refute the very allegations on which the counterclaims depend.

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion and dismiss each of Defendants' eleven counterclaims with prejudice, and grant Plaintiffs such other and further relief as this Court deems just and proper.

Dated:  April 21, 2026
New York, New York

Respectfully submitted,

Andrew I. Silfen
James E. Britton
ArentFox Schiff LLP
1301 Avenue of the Americas, 42nd Floor
New York, New York  10019
Tel. 212-484-3903
Andrew.Silfen@afslaw.com
Counsel for Plaintiffs AFN ABSPROP001, LLC
and ARG ME19PCK001, LLC

29

## CERTIFICATION OF WORD/PAGE COUNT

I, Andrew I. Silfen, hereby certify that the word count of the foregoing complies with the word limits of Judge Abrams' Individual Rules & Practices in Civil Cases and Local Civil Rule 7.1. According to the word-processing system used to prepare the foregoing Memorandum of Law, the total word count for all printed text exclusive of the material omitted under the Rules (the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but do include material contained in footnotes or endnotes) is 8,728.

                                                       _____
                                                          Andrew I. Silfen